IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ICON HEALTH & FITNESS, a Utah Corporation,<br><br>     Plaintiff,<br><br>v.<br><br>PEDNAR PRODUCTS, a California Corporation and ARTHUR NAREVSKY, an individual,<br><br>     Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS<br><br><br>Case No. 1:13-CV-152 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Motion to Dismiss, or in the alternative to Transfer Venue. Defendant Pednar Products, Inc. ("Pednar") moves to dismiss for lack of subject matter jurisdiction. Defendants Pednar and Arthur Narevsky ("Narevsky") move to dismiss for lack of personal jurisdiction. For the reasons discussed below, the Court will dismiss Pednar as no claims are asserted against it and dismiss Narevsky for lack of personal jurisdiction.

I. BACKGROUND

Defendant Narevsky holds the patent to a fitness roller technology involving a convoluted (egg crate) design, Patent No. D670,817 (the "'817 Patent"). Narevsky is also the owner of Pednar.

Plaintiff ICON Health & Fitness ("ICON") markets a fitness roller with an egg crate design (the "ICON roller"). Beginning sometime in 2012 or 2013, Narevsky began communicating with representatives at ICON. Narevsky informed ICON that he believed the ICON roller infringed the '817 Patent and that ICON needed to either buy Narevsky's foam

1

roller or enter into a licensing agreement with Narevsky in order to sell the ICON Roller. On multiple occasions, through e-mail[1] correspondence, Narevsky himself, or an agent of Narevsky named Mike Laban, ("Laban") threatened legal action. In addition, Narevsky mailed product samples to ICON and held telephone conversations with ICON.

On August 1, 2013, Narevsky attended the Outdoor Retailer Trade Show in Salt Lake City, where Narevsky and Dave McEvoy ("McEvoy"), an ICON representative, had a conversation about foam rollers. The exact contents of the conversation are disputed, therefore, at this stage of the litigation, the Court reviews the facts in the light most favorable to ICON. According to McEvoy's Declaration, Narevsky discussed the '817 Patent and the possibility of licensing the '817 Patent to ICON.[2] The next day Laban e-mailed McEvoy stating, "Thanks for spending some time with Art [Narevsky] yesterday. We look forward to discussing this opportunity with you in more detail. As Art [Narevsky] mentioned, we hold the patent on the convoluted design (US Design Patent No. D670,817)."[3]

From that point until late October 2013, Narevsky and his agents escalated their e-mailing efforts and threats to sue. For example, on October 8, 2013, Narevsky wrote to McEvoy at ICON indicating that he desired a 10% royalty agreement.[4] On October 4, 2013, Narevsky wrote McEvoy noting that he had convinced the legal team to wait to file a lawsuit until further discussions could occur.[5] On October 21, 2013, Narevsky sent an e-mail to McEvoy stating that

---

[1] Docket No. 27, at 3.
[2] *Id.*
[3] Docket No 27 Ex. C, at 3–4.
[4] *Id.* Ex. J.
[5] *Id.* Ex. K.

the ordinary observer test would show infringement by ICON's roller.[6] Again, on October 21, 2013, Narevsky sent an e-mail noting that if he did not hear back that same day about a licensing agreement involving the convoluted design, his legal team would pursue a lawsuit.[7] On October 24, 2014, ICON filed for declaratory judgment of non-infringement and invalidity.[8] On January 17, 2014, ICON filed an Amended Complaint where it added a patent misuse claim. Defendants have now moved to dismiss.

## II. CLAIMS AGAINST PEDNAR

Defendants argue that there is not subject matter jurisdiction over Pednar because it is not the owner of the patent at issue. The caption in this matter names both Pednar and Narevsky as Defendants. However, the Amended Complaint only asserts claims against Narevsky. While Plaintiff alleges that Pednar and Narevsky are alter egos of each other, Plaintiff does not aver factual allegations to support such contention. Further, Plaintiff concedes that it does not bring any claims against Pednar.[9] Because no claims are asserted against Pednar, Defendants' Motion to Dismiss Pednar will be granted.

## III. PATENT MISUSE

Patent misuse is an affirmative defense that arises from the equitable doctrine of unclean hands.[10] It is generally treated as an affirmative defense and not an independent cause of

---

[6] *Id.* Ex. L.

[7] *Id.* Ex. M.

[8] Docket No. 2.

[9] Docket No. 26, at 12.

[10] *C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998).

action.[11]  "Patent misuse refers to a loose collection of activities by which the patent owner is said to have taken unfair advantage of the patent right in the marketplace."[12]  The Federal Circuit has characterized patent misuse as the patentee's act of imposing conditions that "impermissibly broaden[] the physical or temporal scope of the patent grant with anticompetitive effect."[13]  The doctrine's purpose is "preventing a patentee from extending the *economic effect* beyond the legal monopoly involved in the grant of the patent."[14]  "Patent misuse occurs where the patent owner attempts to extend the impact of his patent beyond its proper scope."[15]

ICON alleges that Narevsky and his agents/employees stated that Pednar owned and would enforce the '817 Patent.  In fact, Narevsky, not Pednar, owns the '817 Patent.  ICON argues that because it thought a company owned the '817 Patent, it took the threats of litigation more seriously than if it knew an individual owned it.  ICON argues that if it had known the '817 Patent was owned by an individual who "did not have corporate resources to back its enforcement, its reaction to Narevsky's threats of litigation would have been different."[16]  ICON claims that Narevsky's purpose in repeatedly misrepresenting the ownership of the patent was to expand the patent's market benefit, to anticompetitive effect.  ICON seeks damages because of the alleged patent misuse.[17]

---

[11] *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1428 (Fed. Cir. 1997).

[12] R. Moy, Walker on Patents § 18.1 (4th ed. 2006).

[13] *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986) (citation and internal quotation marks omitted).

[14] *United States v. Teletronics Proprietary, Ltd.*, 607 F. Supp. 753, 754 (D. Colo. 1983).

[15] *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).

[16] Docket No. 26, at 13.

[17] Docket No. 23, at 9.

ICON cites *B. Braun Medical, Inc. v. Abbott Laboratories* to support its position that patent misuse can be used as an affirmative claim.[18] While courts have allowed patent misuse as an affirmative declaratory judgment claim, courts have not allowed such a claim to give rise to an action for damages.[19] In *Braun*, the defendant in a patent infringement action denied infringement, asserted a validity defense, and asserted a declaratory judgment counterclaim for patent misuse.[20] The problem with ICON's position is that a patent misuse claim cannot itself establish damages.[21] "An infringer who successfully demonstrates misuse might be entitled to a declaratory judgment that patent misuse has occurred, but any subsequent relief (such as damages incurred by the infringer pursuant to such misuse) must be sought through a separate substantive claim."[22]

In *Braun*, the Federal Circuit explained that "patent misuse simply renders the patent unenforceable. . . .[T]he defense of patent misuse may not be converted to an affirmative claim for damages simply by restyling it as a declaratory judgment counterclaim."[23] The Federal Circuit also explained that "[w]hen used successfully, [patent misuse] results in rendering the patent unenforceable until the misuse is purged. It does not, however, result in an award of

---

[18] Docket No. 26, at 12.

[19] *B. Braun Med., Inc. v. Abbott Labs*, 38 F. Supp. 2d 393, 395 (E.D. Pa. 1999) ("[T]he principle[] that patent misuse is an unclean hands defense not giving rise to an action for damages . . . [is] familiar and well-established . . . ."), *on remand from* 124 F.3d 1419; *see also Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d, 540, 552–53 (S.D.N.Y. 2007); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-CV-2868-MSK-KMT, 2013 WL 1231875, * 5 n.2 (D. Colo. Mar. 27, 2013) (unpublished opinion).

[20] *Braun*, 124 F.3d at 1422.

[21] *Id.*

[22] *L-3 Commc'ns Corp.*, 2013 WL 1231875, * 5 n.2 (citing *Braun*, 124 F.3d at 1428).

[23] *Braun*, 124 F.3d at 1428.

damages to the accused infringer."[24]  Thus, despite ICON having pleaded an affirmative cause of action for patent misuse and having attempted to plead damages related to that cause of action, this Court will consider the patent misuse claim a declaratory judgment claim and will apply the personal jurisdiction law applicable to the declaratory judgment action.[25]

## IV.  PERSONAL JURISDICTION

To establish specific jurisdiction the plaintiff must show that (1) the defendant has purposely directed its activities at residents of the forum, (2) the plaintiff's claim arises out of or relates to those activities, and (3) the Court's exercise of personal jurisdiction is fair and reasonable.[26]  To survive a motion to dismiss for lack of personal jurisdiction without discovery, plaintiff must make a *prima facie* showing of personal jurisdiction.[27]  Uncontroverted allegations in the plaintiff's complaint are accepted as true and the court will resolve any factual conflicts in the affidavits in the plaintiff's favor.[28]

Personal jurisdiction for invalidity, unenforceability, or non-infringement is determined by Federal Circuit law "because the jurisdictional issue is intimately involved with the substance of the patent laws."[29]  Neither party argues that there is general jurisdiction over Narevsky. Therefore, the Court begins its analysis with specific personal jurisdiction.

---

[24] *Id.* at 1427.

[25] *Id.*

[26] *Autogenomics, Inc. v. Oxford Gene Tech.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009).

[27] *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) (citation omitted).

[28] *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008).

[29] *Id.* at 1336.

In the declaratory judgment context, the specific jurisdiction question turns on the extent to which the "defendant patentee purposely directs activities at the forum which relate in some material way to the enforcement or the defense of the patent."[30]

The Federal Circuit has held that "attempts to sell a product or license a patent do not give rise to personal jurisdiction in declaratory judgment actions for non-infringement or invalidity."[31] "[O]nly enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee."[32]

In considering enforcement efforts related to the patent, the Federal Circuit has held that cease-and-desist letters alone, without additional enforcement activities purposefully directed to the forum, are insufficient to give personal jurisdiction over the defendant patentee in the declaratory judgment context.[33] However, cease-and-desist letters, in combination with other activities can give rise to personal jurisdiction.[34] These other activities have included extra-judicial patent enforcement by harming plaintiff's business activities in the forum state,[35] entering into an exclusive license with an entity in the forum state,[36] and initiating a suit seeking

---

[30] *Id.* at 1332.

[31] *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 790 (Fed. Cir. 2011).

[32] *Autogenomics*, 566 F.3d at 1020 (citing *Avocent*, 552 F.3d at 1336).

[33] *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).

[34] *See, e.g.*, *Autogenomics*, 566 F.3d at 1019 (collecting cases).

[35] *See, e.g.*, *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885–87 (Fed. Cir. 2008).

[36] *See, e.g.*, *Breckenridge Pharm., Inc. v Metabolite Labs., Inc.*, 444 F.3d 1356, 1366–67 (Fed. Cir. 2006).

to enforce the same patent that is at issue in the current lawsuit in an unrelated action in the same district court.[37]

In *Radio Systems Corp. v. Accession, Inc.*, a patentee was sued in a declaratory judgment action in Tennessee.[38] In that case, the patentee contacted Radio Systems in Tennessee seeking a collaboration wherein Radio Systems would license a product that utilized the patentee's patent.[39] The patentee sent additional e-mails and engaged in negotiations but reached no agreement.[40] In April 2009, the patentee traveled to Tennessee to demonstrate the product to Radio Systems.[41] Following the meeting, the patentee sent even more e-mails marketing its product to Radio Systems to no avail.[42] By August 2009, the relationship between the companies became adversarial and both parties retained counsel.[43]

In determining whether there was personal jurisdiction, the district court discounted all contacts prior to August 2009, including the in-person visit where the patentee traveled to Tennessee. The district court held, and the Federal Circuit affirmed, that in-person negotiations are "clearly analogous to the cease-and-desist communication at issue in the bevy of cases on the subject."[44] Even though the patentee traveled to Tennessee in an attempt to license its patent, the

---

[37] *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996).
[38] *Radio Sys.*, 638 F.3d at 787.
[39] *Id.*
[40] *Id.* at 787–88.
[41] *Id.*
[42] *Id.*
[43] *Id.* at 790.
[44] *Autogenomics*, 566 F.3d at 1019.

Federal Circuit affirmed the district court and held that the patentee's Tennessee contacts were insufficient to give rise to specific jurisdiction.

The issue of specific jurisdiction turns on the enforcement activities Narevsky directed at Utah. ICON argues that Narevsky's visit to Utah in August 2013 constitutes enforcement activities in the forum and when taken together with cease-and-desist letters, there is sufficient enforcement activity in the forum to support personal jurisdiction over Narevsky. Narevsky argues that his visit to Utah, at most, constitutes attempts to license its patent and is therefore not relevant to the jurisdictional analysis.

It is undisputed that Narevsky attended a trade show in Utah in August 2013 and discussed foam rollers with representatives from ICON. ICON argues that this visit was for enforcement purposes. At this stage of the litigation, the Court resolves all factual conflicts in Plaintiff's favor. ICON's agent McEvoy states in his affidavit that during the conversation in Utah, Narevsky

> aggressively pitched his foam products, with a particular focus on the Pednar Roller. He told me that the Pednar Roller was patented, and that they had invested a ton of energy and money into the Roller and the patent, and that they needed to be compensated for that effort one way or another.[45]

The next day Laban, Narevsky's agent, followed up via e-mail stating, "Thanks for spending some time with Art [Narevsky] yesterday. We look forward to discussing this opportunity with you in more detail. As Art [Narevsky] mentioned, we hold the patent on the convoluted design (US Design Patent No. D670,817."[46] On August 6, 2013, Laban again e-mailed McEvoy at ICON quoting a price and then stating "[i]f this price will work for you, then

---

[45] Docket No. 27, at 3.

[46] *Id.* Ex. C, at 4.

we can move forward and fine tune the details.  If not, again share your costs with us, and we can work out a royalty/license agreement and allow you to have them manufactured through whatever source you already had lined up.  Let me know how you would like to proceed and we'll see how we can work together on this."[47]

Considering these e-mail exchanges, the Court finds that Narevsky's visit to Utah in August 2013, constituted commercialization efforts, not patent enforcement efforts, and is therefore irrelevant to the jurisdictional analysis.  McEvoy's declaration explains that Narevsky pitched his products with a particular focus on the foam roller.  Additionally, Laban's follow-up e-mail focused on either selling or licensing the foam roller to ICON.  Such activities are similar to commercialization efforts that were not considered relevant to the jurisdictional analysis in *Radio Systems*.  Even if the Court were to find that Narevsky's visit to Utah constituted enforcement activity, the e-mails, telephone calls, and in person contact that remain are analogous to cease-and-desist letters.[48]  These contacts are insufficient to support personal jurisdiction over Narevsky.  Therefore the Court lacks jurisdiction over him and this matter must be dismissed.

A. JURISDICTIONAL DISCOVERY

If the Court is to grant Defendants' Motion, ICON requests jurisdictional discovery.  The Court will deny ICON's request because there is no evidence that Pednar's Utah customers had purchased products covered by the '817 Patent.  Further, any sales Pednar may have made to Utah customers are irrelevant as ICON brings no claims against Pednar.

---

[47] *Id.* at 3.
[48] *Autogenomics*, 566 F.3d at 1019.

## V. CONCLUSION

It is therefore

ORDERED that the Defendants' Motion to Dismiss (Docket No. 25) is GRANTED. Defendants' Motion in the alternative to transfer venue is therefore denied as moot.

The Clerk of Court is directed to close this case forthwith.

DATED this 5th day of May, 2014.

BY THE COURT:

_____
Ted Stewart
United States District Judge